STATE OF CONNECTICUT *v.* STANLEY D. CHANCE
(14871)

Peters, C. J., and Callahan, Berdon, Norcott and Palmer, Js.

Argued September 22, 1995—decision released February 13, 1996

*Temmy Ann Pieszak*, assistant public defender, with whom was *Mary Miller Haselkamp*, assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James Dinnan*, assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Stanley D. Chance, appeals[1] from judgments of conviction rendered by the trial court after a jury found him guilty of both arson in the first degree in violation of General Statutes § 53a-111[2] and assault of a correctional officer in violation of General Statutes § 53a-167c.[3] The defendant claims that

---

[1] The defendant appeals directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony . . . for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[2] General Statutes § 53a-111 provides in relevant part: "Arson in the first degree: Class A felony. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion, a peace officer or firefighter is subjected to a substantial risk of bodily injury."

[3] General Statutes § 53a-167c provides in relevant part: "(a) A person is guilty of assault of [an] . . . employee of the department of correction . . . when, with intent to prevent a reasonably identifiable . . . employee of the department of correction . . . from performing his duty, and while

the trial court improperly: (1) denied his request for a severance; (2) refused to instruct the jury on a lesser offense than arson in the first degree; (3) permitted a defense witness to be impeached with the fact that he had filed several lawsuits challenging the constitutionality of his treatment by prison authorities; (4) allowed the state to question him about three prior acts of alleged misconduct; (5) denied his request for a psychiatric examination in accordance with General Statutes § 17a-566; and (6) instructed the jury on the definition of reasonable doubt. The defendant also contends that certain comments made by the prosecutor during his closing argument to the jury deprived him of a fair trial. We reject all of the defendant's claims and affirm both judgments of conviction.[4]

The jury reasonably could have found the following facts. At all times relevant to this appeal, the defendant was an inmate at the New Haven correctional center. On February 2, 1993, he was transferred from a dormitory unit in that facility to a cell in the protective custody unit. At dinner hour that same day, correctional officer Tanya Mercoucheff, who was on duty in the defendant's cellblock, opened the doors of the cells in that block so that the inmates who wished to eat could proceed to the day room, where dinner was being served. The defendant, however, remained in his cell during the dinner period and, therefore, did not eat.

---

such . . . employee . . . is acting in the performance of his duties . . . (4) he throws, hurls, or causes to be thrown or hurled, any paint, dye or other like or similar staining, discoloring or coloring agent or any type of offensive or noxious liquid, agent or substance at such . . . employee . . . ."

[4] The trial court sentenced the defendant on the arson count to a term of imprisonment of twelve years, suspended after five years, with three years probation, and on the assault count to a prison term of two years, the sentences to run consecutive to each other and to the sentence already being served by the defendant.

After the other inmates in his block had returned to their cells from dinner, the defendant set fire to a piece of paper in his cell. Several correctional officers responded and extinguished the fire. Mercoucheff then went to the defendant's cell to determine why he had set the fire. The defendant told Mercoucheff that he had done so to draw attention to the fact that the door to his cell had not been opened at the dinner hour and that, consequently, he had been unable to leave his cell to eat. Mercoucheff informed the defendant that she had, in fact, opened his cell and that it was too late for him to eat dinner that evening.

Shortly after his conversation with Mercoucheff, the defendant asked another inmate to tell Mercoucheff that if he was not promptly served dinner, he would "light the [expletive] on fire."[5] A few minutes later, the defendant, having received no response to his demand, set his mattress on fire. This fire, which also was extinguished by prison personnel, necessitated the evacuation of the other inmates on the cellblock and caused smoke damage to the wall of the defendant's cell.

That evening, the defendant was removed from his cell in the protective custody unit and placed in the institution's segregation unit. Later that night, the defendant gave a signed statement regarding the fire[6] to state police troopers Philip Pilletere and Warren Hyatt, both of whom had been assigned to investigate the incident. In his statement, the defendant admitted to having set his mattress on fire in protest over the fact that he had not been served dinner. The defendant subsequently was charged with arson in the first degree.

Several days later, on the afternoon of February 7, 1993, Mercoucheff, who was on duty in the segregation

---

[5] The defendant claimed that he was referring to his mattress, while the state contended that he was referring to the cellblock.

[6] All references hereinafter are to the mattress fire. The earlier paper fire, which was also set by the defendant, is not the subject of this appeal.

unit, conducted a head count in the defendant's cell-block. This task required her to inspect each cell visually to confirm that each inmate was present. As Mercoucheff looked through the screened window in the door of the defendant's cell to confirm that the defendant was present, she was struck in the mouth, eyes, hair and chest with urine thrown from the defendant's cell. Later that day, the defendant admitted to Lieutenant Melvin Wells, the supervisory correctional official on duty, that he had thrown the urine. The defendant claimed, however, that he had intended to strike an inmate across the hall rather than Mercoucheff. The defendant further explained that the urine had accidentally struck Mercoucheff when, coincidentally, she had appeared in front of his cell at the precise moment that he had thrown it.[7] As a result of this incident, the state charged the defendant with assault of a correctional officer under § 53a-167c.

The trial court, over the defendant's objection, granted the state's motion to consolidate the arson and assault counts for trial. At the request of the defendant, however, the court also ordered a bifurcation of the evidentiary portion of the trial, requiring the state and the defendant first to present all of their evidence on the arson charge, to be followed by the evidence on the assault charge.

Thereafter, trial commenced. After the state had rested its case on the arson count, the defendant testified in his own defense with respect to that count. During his testimony, the defendant stated that he previously had been convicted of eleven felonies, four of which involved larcenies, "basically" for "stealing cars."[8] The state then proceeded with its evidence on

---

[7] The defendant also provided state police investigators with a signed statement that contained a similar account of the urine-throwing incident.

[8] On cross-examination, the state listed the dates of the eleven prior convictions and the defendant responded that it was he who had been

the assault count, at the conclusion of which the defendant informed the court that he elected not to testify with respect to that charge.

After all of the evidence had been presented in both cases, the defendant renewed his objection to the consolidation of the two charges for trial, claiming that the jury reasonably could not be expected to disregard his eleven prior felony convictions, which were admissible only in regard to the arson charge, in its consideration of the assault charge. The trial court again denied the defendant's severance request and proceeded to charge the jury, which found the defendant guilty of both charges. Additional facts and procedural background will be provided as necessary.

I

The defendant first claims that the trial court improperly consolidated the arson and assault charges for trial. Specifically, he argues that he is entitled to a new trial: (1) on the arson charge, because the state's evidence on the assault charge, which was unrelated to and inadmissible in regard to the arson charge, severely prejudiced him in his defense of the arson charge; and (2) on the assault charge, because the evidence of his eleven prior felony convictions, which was admissible only for impeachment as to the arson charge, severely prejudiced him in his defense of the assault charge. We are not persuaded.

Our review of a criminal defendant's claim of error concerning the consolidation of charges for trial involves the question of whether the trial court abused its discretion in failing to conclude that the defendant would suffer "substantial injustice" if the two charges were adjudicated in a single trial. *State* v. *Boscarino,*

convicted. By order of the trial court, no further details regarding any of the prior felonies were introduced. See *State* v. *Dobson,* 221 Conn. 128, 138, 602 A.2d 977 (1992).

204 Conn. 714, 721, 529 A.2d 1260 (1987). We have consistently recognized a "clear . . . presumption . . . in favor of joinder and against severance. *State* v. *Boscarino*, [supra, 721]." *State* v. *Jones*, 234 Conn. 324, 344, 662 A.2d 1199 (1995). "The grant or denial of a motion for severance rests in the sound discretion of the trial judge. *State* v. *Jonas*, [169 Conn. 566, 570, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976)]; *State* v. *Silver*, [139 Conn. 234, 240, 93 A.2d 154 (1952)]; *State* v. *Klein*, [97 Conn. 321, 324, 116 A. 596 (1922)]. Consistent with this discretion, which is broad, an accused bears a heavy burden to show that the denial of severance resulted in substantial injustice because of a manifest abuse of discretion in denying severance. *United States* v. *Morrow*, 537 F.2d 120, 134 (5th Cir. 1976), cert. denied sub nom. *Martin* v. *United States*, 430 U.S. 956, 97 S. Ct. 1602, 51 L. Ed. 2d 806 (1977); *State* v. *Jonas*, supra, 570; *State* v. *Oliver*, [161 Conn. 348, 361, 288 A.2d 81 (1971)]; *Commonwealth* v. *Gallison*, [383 Mass. 659, 671, 421 N.E.2d 757 (1981)]." *State* v. *King*, 187 Conn. 292, 302, 445 A.2d 901 (1982). The burden includes a showing that any prejudice from joinder "was beyond the curative power of the court's instructions." (Internal quotation marks omitted.) *State* v. *Boscarino*, supra, 721. We conclude that the defendant has not met his heavy burden on either of his two claims relating to alleged impropriety in the consolidation of the two charges against him.

The following additional facts and procedural history are necessary to our resolution of the issues presented by the defendant's claim. Before trial, the state moved for joinder of the arson and assault charges. The defendant objected to consolidation of the charges for trial, claiming, inter alia, that the conduct underlying the assault charge was so shocking that the state's evidence of that charge would unduly prejudice him as to the arson charge, and that joinder would unfairly interfere

with his right both to testify as to the arson charge and not to testify in regard to the assault charge. The trial court overruled the defendant's objection to the state's consolidation motion.

Several days after the trial court's ruling on the state's motion for consolidation, the state disclosed to the defendant inculpatory evidence pertaining to the assault charge. Specifically, the state informed the defendant that it intended to elicit testimony from Pilletere that, while Pilletere was questioning the defendant about the alleged arson, Mercoucheff walked by the interview room, prompting the defendant to exclaim, "[T]here goes that bitch, I'm going to get her," or words to that effect.[9] Upon receipt of this information, the defendant renewed his objection to the consolidation of the assault and arson charges for trial on the theory that the threat, inadmissible as to the arson charge, would be "one more act of misconduct that is going to taint [the defendant's] fair trial on the charge of arson." The trial court again overruled the defendant's objection to consolidation, and trial thereafter began.

At the conclusion of the state's evidence on the arson charge, the defendant testified in his own defense with respect to the arson.[10] He admitted that he had set fire to his mattress on February 2, but insisted that he had done so only with the intent to gain the attention of prison officials, not intending to destroy or to damage the prison facility. The defendant also acknowledged that he had previously been convicted of eleven felonies, including four for larceny.[11]

---

[9] At the time of the interview, Pilletere had not considered the defendant's remark relevant to his arson investigation and, consequently, he had not noted it in his report.

[10] The defendant also called several witnesses in the defense case.

[11] The prosecutor also sought to impeach the defendant by questioning him concerning four separate incidents of alleged dishonesty. The defendant has challenged the propriety of those questions. See part IV of this opinion.

After the completion of the defense case with respect to the arson charge, the defendant failed to renew his objection to the consolidation of the charges for trial. The state then presented its case-in-chief as to the assault charge. As part of that case, one of the state's witnesses, Wells, testified concerning his conversation with the defendant, reciting for the jury the defendant's exculpatory version of the urine-throwing incident.[12] The state did not introduce the alleged threat that the defendant had made toward Mercoucheff. Once the state had completed its case, the defendant informed the court that he wished neither to testify nor to present any other form of defense as to the assault charge.

At that point, in advance of the formal jury instructions, the court reminded the jury that it was dealing with two distinct cases. The court also emphasized to the jury that the defendant did not have to put on any evidence at all but could leave the state to its proof as the defendant had done in the assault case. Further, the court reminded the jury that it should draw no adverse inference from the defendant's failure to present a defense in one case even though he had presented a defense in the other. The jury was then excused so that, before the formal jury instructions were given, a record of the charging conference could be created.

At that point, the defendant renewed his objection to the consolidation of the two charges for trial. His objection was twofold: (1) he had been prejudiced by the fact that a defense had been presented as to one charge but not as to the other; and (2) he had been prejudiced as to the assault charge because the jury had been made aware of his eleven prior convictions during the arson case. He claimed that if the trials had not been consolidated, a jury empaneled for the assault

---

[12] The state chose not to introduce the defendant's written statement regarding this incident. See footnote 7.

case would not have heard evidence of his prior convictions if he did not testify.[13] Never subsequent to his original objection to consolidation did the defendant claim that, as a result of the consolidation, he was being or had been deprived of a meaningful choice as to whether to testify. The trial court again overruled the defendant's objection to consolidation and proceeded to charge the jury.

In its charge, the trial court instructed the jury that it was to consider the defendant's prior felony convictions for impeachment purposes only and that it was "not permitted to infer, based upon the defendant's felony convictions, that he was any more likely to commit the offenses charged in these cases." The jury also was instructed that "no unfavorable inference may be drawn from the fact that the defendant . . . chose to testify in the arson case and not in [the assault] case. His decision to exercise his right in one case must have no impact on the other. . . . You must not permit such a fact to weigh in the slightest degree against the defendant . . . ." Lastly, the jury was twice instructed not to consider the evidence presented on one charge in its deliberations on the other charge.[14]

---

[13] Defense counsel stated: "I don't think Your Honor can say well, you heard he had prior felony convictions and you can use that to impeach his credibility, and I don't think they can forget about that when they are deciding whether my client had the intent to prevent a reasonably identifiable employee [of the department of correction] from performing her duties."

[14] First, the court instructed the jury as follows: "As I have already made clear throughout this proceeding, the defendant is charged with two separate offenses, even though those cases were consolidated into a single trial. In one information, the state has charged Mr. Chance with arson in the first degree and in the other information the state has charged the defendant with assault on a department of correction employee. You must consider each alleged incident separately and distinctly from the other. You must keep them both separate in your evaluation of the facts and separate in your minds in the determination of your verdict. The evidence from one alleged incident must not be considered by you or affect your verdict in the other alleged incident. Also, by virtue of the fact that there are two separate informations pending against the defendant, you must not hold

A

The defendant first claims that the evidence introduced by the state on the assault charge so prejudiced him in his defense of the arson charge that, notwithstanding the trial court's limiting instructions, he is entitled to a new trial on the arson count. We do not agree.

We have stated that severance may be necessary to prevent undue prejudice resulting from the consolidation of two or more charges for trial when: (1) the cases do not involve discrete, easily distinguishable factual scenarios; (2) one or more of the counts alleges brutal or shocking conduct by the accused; or (3) the trial is one of long duration or very complex. *State* v. *Boscarino*, supra, 204 Conn. 722–24; see also *State* v. *Jennings*, 216 Conn. 647, 657–58, 583 A.2d 915 (1990). Whether to grant a severance, however, is a decision committed to the sound discretion of the trial court, the exercise of which will not be disturbed on appeal absent manifest abuse. *State* v. *Jennings*, supra, 657; *State* v. *Boscarino*, supra, 721. Finally, "[i]t is the defendant's burden on appeal to show that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Internal quotation marks omitted.) *State* v.

that against the defendant in any way. The court has consolidated these two alleged incidents for the purpose of judicial expediency. The court is attempting to see to it that the introduction of evidence was conducted in an orderly fashion first with respect to the first incident and then with respect to the second. The purpose of this order was to assist you in keeping these two alleged incidents separate and distinct. You cannot merge the two incidents in any way. For that reason you should deliberate on each charge separately. Remember, the state must prove each element of the offense beyond a reasonable doubt before you return a guilty verdict on a charge. The fact that there are two separate charges here does not mean that the state has a lesser standard or burden of proof with respect to either charge."

Later, the court reiterated its earlier instruction as follows: "Again I will remind you that you are dealing with two separate cases here. You are to consider them separate and apart from one another . . . ."

*Boscarino*, supra, 721. We conclude that the trial court's refusal to sever the trial of the assault charge from that of the arson charge did not unduly prejudice the defendant.

First, the two charges were clearly distinguishable and arose from two discrete incidents that occurred several days apart. Further, there was no evidence presented at trial likely to have confused the two events in the minds of the jurors. Moreover, any remote possibility of confusion was eliminated by the trial court's order requiring that evidence in the arson case be presented first, followed by evidence in the assault case. Second, although the conduct underlying the assault charge was certainly distasteful, we cannot say that it was "brutal or shocking" as contemplated in *Boscarino*. See *State* v. *Herring*, 210 Conn. 78, 97, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989) (two murders, each involving multiple gunshot wounds and occurring during or after commission of robbery, not so "brutal and shocking" as to require severance). Thus, there is no reason to conclude that the evidence presented on the assault charge was likely to have inflamed the emotions of the jury so that it could not render a fair verdict in the arson case. See, e.g., *State* v. *Silver*, supra, 139 Conn. 240 (severance appropriate when crimes involve brutality "that is apt to arouse the passion of the jury against [the defendant]"). Third, the issues presented by the two cases were simple and straightforward, and the evidence adduced at trial, which was completed in fewer than five trial days, was similarly uncomplicated. Finally, the trial court properly instructed the jury not to consider the evidence adduced by the state on the assault charge in its deliberations on the arson charge. Accordingly, consolidation of the two cases did not unduly prejudice the defendant in his defense of the arson charge.

## B

The defendant also raises the interrelated claims that consolidation adversely affected his free choice as to whether to testify in his own defense, and that the admission of his prior felony record for impeachment purposes in the arson case rendered the jury unable to reach a fair and impartial verdict on the assault charge despite extensive instructions by the trial court. We are not persuaded.

In order properly to resolve the complex issues involved in the defendant's claims, we must recognize that the defendant's objection to consolidation evolved and changed significantly over the course of the trial. Before trial, the defendant argued that his free choice with respect to whether to testify would be infringed if the charges were consolidated for trial because, at that point, he claimed that he wished to testify as to the arson charge but not as to the assault charge. After trial, the defendant did not claim that his choice of whether to testify was infringed or indeed that his decision as to whether to testify would have been affected at all had the charges not been consolidated for trial. Rather, he claimed only that in the assault case the jurors would necessarily have been prejudiced against him irreparably because they had become aware of his felony record when he had testified during the arson phase of the proceedings. Admittedly, any possible prejudice could not have occurred had the charges not been consolidated or had the defendant not testified concerning the arson. During his posttrial objection to the consolidation, however, the defendant did not argue that his choice of whether to testify was limited by the consolidation of the charges. Indeed, the defendant avowed from the beginning that he had wished to testify in the arson trial charge but not the assault trial. That, in fact, is precisely what he did.

The only relevant question presented to the trial court in the defendant's posttrial objection to consolidation was whether the jury could render a just verdict on the assault charge despite the fact that they had been apprised for impeachment purposes of the defendant's criminal history in the course of the arson trial. The trial court concluded that the defendant would not be substantially prejudiced as to the assault charge if adequate instructions were given. We agree that the defendant was not substantially prejudiced. We will address separately the defendant's pretrial and posttrial objections to consolidation as related to the introduction of his prior felony record in the arson case.

In the defendant's pretrial objection to the state's motion to consolidate, it was represented to the trial court by defense counsel that the defendant "may testify in one case and not the other." Additionally, it was represented by defense counsel "that she would advise the defendant to refrain from testifying in the urine-throwing case, and would probably advise the defendant to testify in the arson matter." The defendant's attorney stated that she intended to make those recommendations because the defendant would have need to explain to the jury his incriminating statement to the authorities concerning the charge of arson,[15] but would not have to testify in the assault case because it was assumed that an exculpatory statement[16] he had

---

[15] The substance of this statement is that the defendant had become involved in a dispute with Mercoucheff regarding his dinner arrangements on February 2, 1993. The defendant stated that he asked another inmate to tell Mercoucheff that if he was not served dinner within ten minutes he was "gonna light the [expletive] on fire." The defendant then admitted that shortly thereafter he "lit the paper on fire with matches and threw the paper on the mattress."

[16] The substance of this statement is that the defendant and the inmate across the corridor from him had been engaged in a water fight and that "I decided that if I threw urine at him he would stop. As I threw the urine at [the other] inmate I was unaware that . . . Mercoucheff was walking near [the cell adjacent to mine]. . . . Mercoucheff was then struck with the

given to the police would be introduced by the state during its case-in-chief. Defense counsel also cited the possibility of impeachment of the defendant's credibility by means of his criminal history as a reason why she thought she would advise him not to testify in the trial of the assault charge. Unpersuaded by the defendant's arguments, the trial court granted the state's motion to consolidate. The defendant thereafter reserved his right to renew his objection to consolidation in the event that he "elect[ed] to testify in one matter and not the other." The court informed the defendant that it "would deal with [that eventuality] at that time if it arises."

A defendant who requests a severance on the theory that joinder of charges for trial will unfairly compromise his choice to testify or not to do so in his own defense must demonstrate "that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying." (Internal quotation marks omitted.) *State* v. *Schroff*, 198 Conn. 405, 409, 503 A.2d 167 (1986). The trial court properly overruled the defendant's pretrial objection to the consolidation of the arson charge and the assault charge because the defendant failed to divulge a clear intent to testify as to one count but not the other. Defense counsel, in her pretrial objection to consolidation, stated only that she

urine. . . . Mercoucheff then left. I did not intend to strike . . . Mercoucheff with the urine."

"would advise" the defendant to testify as to the arson and "would probably advise" the defendant not to testify as to the assault assuming the state introduced the defendant's version of events through the state's own witness. Defense counsel never represented that she had had any conversations with the defendant concerning his right to testify or that the defendant had any opinion on the matter. See *Closs* v. *Leapley*, 18 F.3d 574, 579 (8th Cir. 1994) (denying severance because "counsel never stated unequivocally that Mr. Closs would in fact testify if the trials were separate"). Defense counsel stated that the defendant would decide whether to testify "down the road" and further qualified her remarks on the defendant's future decision by stating: "I, in my mind at least, have very clear reasons why he would be well advised to testify in the arson case but not the urine throwing case."

On the record before it, the trial court could not determine that the defendant even had considered whether he would testify in either case. Defense counsel, at the time of the motion, did not represent definitively to the trial court one way or the other the defendant's intent. We are mindful that there are cases in which a defendant will have legitimate reasons for being unable to make a decision as to whether to testify until shortly before trial begins, and that a court should not prod defendants to make that decision prematurely. Even if this were a case, however, where the defendant could not initially have made an intelligent decision as to whether to testify, he still could not prevail. After the trial commenced, the defendant never again reasserted his claim that his decision concerning whether to testify was being or had been in any way infringed upon by the consolidation of the charges against him. Once the defendant's intentions as to testifying became clear, he could and should have made them clear to the trial court and renewed his objection to consolida-

tion on the grounds that he had been deprived of a meaningful choice as to whether to testify. He did not do so. The trial court was not sufficiently apprised of the defendant's intentions regarding testifying in order to enable it to overcome the presumption in favor of joinder. The defendant bears a heavy burden when seeking to sever; *State* v. *King*, supra, 187 Conn. 302; and that burden simply cannot be met where the trial court has before it only defense counsel's pretrial representation that she "would probably advise" the defendant to testify as to one charge but not as to the other.

The defendant, however, did renew his objection to consolidation after trial. His objection at that point obviously was akin to a motion for a mistrial. It is necessary to recite additional facts to resolve the validity of the defendant's posttrial objection to consolidation. After the presentation of the defense case on the arson charge, the defendant did not renew, on any grounds, his objection to the consolidation of the charges for trial. The state then began its case-in-chief on the assault charge. Mercoucheff, the first witness, stated that the defendant was a prisoner in the segregation unit on the date of the assault. She then testified in detail as to how she had been doused with urine upon placing her face up to the screened window of the defendant's cell while conducting a routine head count of the inmate population. The next state's witness was Wells, the shift supervisor on duty at the time of the alleged assault on Mercoucheff. He testified that the defendant had told him that the defendant and an inmate across the hall "had been horseplaying back and forth all day" and that he had thrown the urine at the other inmate in order to put an end to the horseplay. The state's final witness was the nurse on duty the night of the assault. She confirmed that Mercoucheff's hair, face and body were "saturated" with urine and that she had rinsed Mercoucheff's eyes with diluted hydrogen peroxide.

Unlike the defendant's pretrial objection to consolidation, his renewed objection to the consolidation at the close of the evidence does not fall within the doctrine of *State* v. *Schroff*, supra, 198 Conn. 405. *Schroff* and its progeny are concerned with situations where " 'the defendant's interest in having a free choice with respect to testifying' " might be compromised. Id., 409. This is not a case where the defendant's ultimate decision with respect to testifying was affected by the court's consolidation of the two trials. The defendant maintained at all times that it would be his preference to testify in the arson case but not the assault case and that is precisely what occurred. Had severance been granted, the defendant's expressed choice would not have been altered.[17]

Moreover, this is not a case where the defendant unwillingly testified as to both counts "in order to avoid

---

[17] We do not, as the dissent suggests, find *Schroff* inapplicable to the defendant's posttrial objection to consolidation "simply because the objection was not made until after the defendant had testified as to the arson count and had elected not to testify with respect to the assault count." We hold, rather, that *Schroff* does not apply because at the time of the posttrial objection, the defendant could not claim that his choice as to whether to testify had been infringed in any way.

This analysis is unaffected by the state's decision not to introduce testimony by Pilletere concerning the defendant's threat to "get" Mercoucheff in its case-in-chief with respect to the assault charge. The defendant maintained in his posttrial objection to consolidation only that the jury's knowledge of his prior felony convictions—knowledge the jury on the assault charge would not have had but for the consolidation—would render the jury unable to deliberate fairly as to the assault charge. See footnote 18. We simply treat the defendant's posttrial objection to consolidation as any other claim where the defendant alleges that unduly prejudicial evidence has come before the jury as a result of consolidation and has rendered the jury unable fairly to deliberate. The mere fact that the admissibility of the defendant's prior felony record was dependent on his decision as to whether to testify does not transform his claim of harm resulting from the introduction of his felony record for impeachment into a claim under *Schroff* that he was deprived of a free choice with respect to testifying. Although it is possible that if the state had introduced the threat the defendant would have felt compelled to testify in the assault case, that consequence has no

the damaging implications of testifying on only one of the two joined counts." *State* v. *King*, supra, 187 Conn. 306. The accused did not claim in his posttrial objection to consolidation that he had been " 'deprived of a choice whether or not to take the stand on any of the charges.' *Dunaway* v. *United States*, 205 F.2d 23, 26 (D.C. Cir. 1953)." *State* v. *King*, supra, 309. He argued only that the jury on the assault charge would have been unaware of his prior felony record if the trials had not been consolidated and that the jury that had heard both cases would be unable to "forget about" his felony record when it deliberated as to the assault charge.[18] Our analy-

---

direct relationship to the impact of the consolidation on the defendant's decision.

[18] Defense counsel's entire argument in support of the defendant's posttrial objection to consolidation was as follows: "I do also have some other motions or comments to make on the record. One is that with respect to my severance objection—my consolidation objection earlier, I wanted to renew that formally. I know that I spoke to Your Honor about this in chambers, but it is my position that, given the posture of these two cases, now that all is said and done, and it turns out, not through any fault of mine or my client, but on some—based on some strategy decision that the state made, state elected not to offer through the trooper my client's statement. In response to that decision my client elected not to put on a defense, as is his right. We're in a situation, Judge, where we have a full blown two-sided trial in one case where my client elected to testify and during which his eleven felony convictions were introduced to impeach his credibility as contrasted to the second trial where the state offered the testimony of three witnesses and the defense chose not to put on a defense including the defendant's own choice not to testify in the particular proceeding and my concern, Your Honor, is twofold.

"Number one, the jury will have heard this very long and drawn out series of testimonies in one case and a very short kind of testimony in the other case and they are—I am afraid will infer we put on a lot of defense witnesses in one case and chose not to put on any in the other case, maybe we're hiding something. I think they draw inferences just from having sat through that first proceeding that would not normally be relevant to a situation had these cases been separated.

"But secondly and more importantly, Your Honor, I submit that the fact that he did not testify at the second trial, while the jury is able to consider his eleven felony convictions as impeachment evidence with respect to his testimony at the first trial, clearly that's not the type of evidence that they ever would have heard about had the second trial occurred as it did here and so it is not the type of situation where I think a curative instruction can address. I simply don't.

sis as to the posttrial objection to consolidation, there-
fore, is properly limited to a consideration of whether
the jury's knowledge of the defendant's criminal history
gained in the arson case rendered it unable to reach a
fair verdict as to the assault charge despite the repeated
admonitions of the trial court to consider that evidence
only for impeachment purposes and only as to the arson
charge. See *State* v. *Boscarino*, supra, 204 Conn. 721–23.

"The discretion of a court to order separate trials
should be exercised only when a joint trial will be sub-
stantially prejudicial to the rights of the defendant, and
this means something more than that a joint trial will
be less than advantageous to the defendant." (Internal
quotation marks omitted.) *State* v. *Schroff*, supra, 198
Conn. 408. The defendant's burden to show substantial
prejudice "includes a showing that any prejudice from
joinder may be beyond the curative power of the court's
instructions." *State* v. *King*, supra, 187 Conn. 302.
" '[T]he jury is presumed, in the absence of an indication
to the contrary, to have followed the instructions of
the trial court.' *State* v. *Moye*, 199 Conn. 389, 396, 507
A.2d 1001 (1986)." *State* v. *Greene*, 209 Conn. 458, 469
n.12, 551 A.2d 1231 (1988). In the present case, the trial

"I don't think that Your Honor can say well, you heard he had prior felony
convictions and you can use that to impeach his credibility, and I don't
think they can forget about that when they are deciding whether my client
had the intent to prevent a reasonably identifiable employee from performing
her duties.

"This is something that I had written about in my memorandum of law
that I submitted for the court at the outset. I specifically stated that I was
concerned about his felony convictions. Now that the trial is completed I
do think that that danger is going to play itself out in the jury deliberation
room. I just wanted to renew my motion to sever these offenses. I don't
think it is too late. I think that the court can indicate to the jury that they
are just to deliberate on the arson charge and I would renew it, Your Honor,
my motion—rather my objection to the state's motion to consolidate because
I think that a continued consolidation of these two matters would only
lead to prejudice to the defendant given the procedural posture of those
particular cases."

court gave clear instructions that the evidence of prior felonies was to be used only for impeachment purposes and was admissible for consideration only as to the arson charge.[19] We routinely allow juries to hear impeachment evidence regarding prior felony convictions and still trust that those juries will be able fairly to judge the defendant's guilt or innocence when properly instructed by the trial court.

While it may be that joint trials were less advantageous to the defendant than separate trials, such a showing is insufficient to require severance. *State* v. *Schroff*, supra, 198 Conn. 408. The defendant must prove "substantial injustice." *State* v. *King*, supra, 187 Conn. 302. The defendant has not met this burden. The jury in the assault case legitimately was aware of facts that reduce the possibility of any significant harm to the

---

[19] The court instructed the jury as follows: "Now, again as to the arson case there was testimony here of a previous felony conviction or previous felony convictions, I should say, on the part of witnesses. The evidence was offered and admitted for one purpose only, that is, to address the question of credibility or believability of those witnesses. A witness's conviction of a prior felony may be weighed by you, but the jury in testing the credibility of a witness—but for that purpose and in testing the credibility of a witness but for that purpose only. You may consider that everything else being equal you would not believe the testimony of a person who has committed a serious crime as readily as you would believe the testimony of a person of good character. You are not required to disbelieve a witness because he has been previously convicted of a felony. It is simply something you may take into account in judging his credibility if you find that it bears on his credibility.

"Now in accordance with these principles I will also instruct you that you are not permitted to infer, based upon the defendant's felony convictions, that he was any more likely to commit the offenses charged in these cases. Again, the only purpose for their use in this case is to assist you, the jury, in evaluating the credibility of the defendant's testimony. Those convictions are not evidence of guilt for the charge at issue in this case and you shall not consider them as evidence of guilt.

"As I have already made clear throughout this proceeding, the defendant is charged with two separate offenses, even though those cases were consolidated into a single trial. . . . The evidence from one alleged incident must not be considered by you or affect your verdict in the other alleged incident. . . ."

defendant arising from the evidence of his prior convictions. For example, the following information was known to the jury: (1) at the time of the assault, the defendant's previous misbehavior had led to his placement in a segregation unit where there is "very, very restrictive confinement," where the inmates are allowed out of their cells for only one hour each day; and (2) the defendant admitted that he had intentionally thrown urine at someone albeit he claimed it was not the correction officer. The jurors were certainly aware that the defendant was not Mary Poppins. It is difficult to see how the additional knowledge of the defendant's criminal record, even if the jurors were of a mind to ignore the court's clear instructions, would have made a difference in their verdict. Given the facts and the trial court's clear instructions to the jury not to commingle the evidence in the two cases and to use the defendant's criminal record solely for impeachment purposes and only in the trial of the arson charge, we do not believe that the jury's knowledge of the defendant's criminal record, gained in the arson case, caused "substantial prejudice" to the defendant in the trial of the assault case.

## II

The defendant next claims that he is entitled to a new trial on the arson charge because the trial court refused to instruct the jury on the lesser offense of criminal mischief in the third degree, General Statutes § 53a-117 (a) (2).[20] We disagree.

At the conclusion of the evidence and before the trial court charged the jury, the defendant requested a jury

[20] General Statutes § 53a-117 provides in relevant part: "(a) A person is guilty of criminal mischief in the third degree when, having no reasonable ground to believe that he has a right to do so, he . . . (2) damages tangible property of another by negligence involving the use of any potentially harmful or destructive force or substance, such as, but not limited to, fire, explosives, flood, avalanche, collapse of building, poison gas or radioactive material."

instruction on the offense of criminal mischief in the third degree. The defendant claimed that, on the basis of the evidence adduced at trial, the jury reasonably could have concluded that he had committed that lesser crime but not arson in the first degree.[21] He further argued that it would be unfair to limit the jury's consideration to the crime of arson in the first degree because the jury might have felt compelled to find him guilty of that crime only because there was no lesser offense of which to convict him. The state objected to the defendant's request on the ground that it is the state's prerogative, not the defendant's, to determine the charges on which an accused will be tried. The state also argued that the defendant's right to an instruction on a lesser crime than that charged in the information is limited under *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), to lesser included offenses, and that criminal mischief in the third degree is not a lesser included offense of arson in the first degree. The trial court denied the defendant's request for a jury instruction on the crime of criminal mischief.

The law governing the right of a defendant to an instruction on a lesser offense than that charged by the state is well established. "A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the

---

[21] Criminal mischief in the third degree is a class B misdemeanor, and is therefore punishable by a maximum term of imprisonment of six months. Arson in the first degree, a class A felony, is punishable by a term of imprisonment of not less than ten years nor more than twenty-five years.

proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id.; see also *State* v. *Arena*, 235 Conn. 67, 73, 663 A.2d 972 (1995); *State* v. *Franko*, 199 Conn. 481, 494, 508 A.2d 22 (1986).

On appeal, as he did at trial, the defendant concedes that the second condition of the *Whistnant* test is not satisfied in this case because it is possible to commit arson in the first degree without first having committed criminal mischief in the third degree.[22] He nevertheless contends that he was entitled to an instruction on criminal mischief because, in light of the undisputed evidence, the jury possibly could have found him guilty of that crime, rather than arson, if it had concluded that the defendant had negligently, rather than intentionally, caused damage to the building when he had set fire to his mattress. The defendant acknowledges that he can prevail on this claim only if we are persuaded to expand the second prong of the test enunciated in *Whistnant*. He argues that considerations of fairness require us to do so. See, e.g., *Moore* v. *State*, 105 Nev. 378, 383, 776 P.2d 1235 (1989) ("fairness to the defendant requires instructions on related but not necessarily included offenses . . . when . . . [1] the lesser offense is closely related to the offense charged; [2] defendant's theory of defense is consistent with a conviction for a related offense; and [3] evidence of the lesser offense exists"); see also *People* v. *Geiger*, 35 Cal. 3d 510, 674 P.2d 1303, 199 Cal. Rptr. 45 (1984) (same). He argues further that a liberalization of the *Whistnant* test would not be unprecedented. See *State* v. *Rodriguez*, 180 Conn. 382, 407, 429 A.2d 919 (1980) ("[f]or purposes of the second condition of *Whistnant* . . . an offense that

---

[22] Indeed, the elements of arson in the first degree and criminal mischief in the third degree are completely different. See footnotes 2 and 20.

would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense"); *State* v. *Smith*, 185 Conn. 63, 77, 441 A.2d 84 (1981) (applying rationale of *Rodriguez*). Having previously addressed and rejected claims substantially similar to that raised by the defendant; see *State* v. *Franko*, supra, 199 Conn. 493–95; *State* v. *Castro*, 196 Conn. 421, 426–29, 493 A.2d 223 (1985); *State* v. *MacFarlane*, 188 Conn. 542, 548, 450 A.2d 374 (1982); we are not inclined to reconsider *Whistnant*. Even if we were otherwise disposed, however, we are not persuaded that this would be the appropriate case for reexamination of our jurisprudence in this area. The defendant acknowledges that he did not notify the state, until the conclusion of the trial, of his intent to seek an instruction on criminal mischief in the third degree, even though its elements differ from those of arson in the first degree. "The constitutionality of instructing on lesser included offenses is grounded on the premise that where one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses. . . . This notice permits each party to prepare a case properly, each cognizant of its burden of proof. When the second condition for a lesser included offense instruction is not met, we cannot presume that the state has had sufficient opportunity to prove each element of the lesser offense beyond a reasonable doubt." (Citations omitted.) *State* v. *MacFarlane*, supra, 548–49; see also *State* v. *O'Neill*, 200 Conn. 268, 280–81, 511 A.2d 321 (1986) ("[a] defendant has no constitutional right to elect which of two applicable statutes shall be the basis of his indictment and prosecution"); *State* v. *Franko*, supra, 495 ("[a] criminal defendant has no constitutional right to a jury instruction on a separate, uncharged crime"). Accordingly, we reject the defendant's claim that the trial court

improperly failed to instruct the jury on the lesser offense of criminal mischief in the third degree.

## III

The defendant next contends that the trial court improperly permitted the state to impeach a defense witness, Peter Ventura, an inmate who had been incarcerated in the defendant's cellblock, with evidence of certain lawsuits that Ventura had filed against department of correction officials. We disagree.

On direct examination, Ventura testified, in corroboration of the defendant's testimony, that prison officials had failed to open the door to the defendant's cell at dinner hour on February 2, 1993. Ventura also explained that he had been placed in the protective custody unit of the facility because he had filed several lawsuits against various prison officials. On cross-examination, the state, in an effort to demonstrate Ventura's bias against prison personnel, sought to question him further about those lawsuits. The defendant objected to any such inquiry by the state on relevancy grounds.

Before ruling on the defendant's objection, the trial court excused the jury to permit the state to conduct a voir dire examination of Ventura. At that voir dire, Ventura testified that he had filed four separate lawsuits against several different officials of the department of correction and, further, that each of the lawsuits alleged unconstitutional conditions of confinement. Ventura also testified that although one of his lawsuits challenged the constitutionality of the conditions at the New Haven correctional center, Mercoucheff was not a party to that or any other lawsuit he filed.

At the conclusion of the hearing, the trial court overruled the defendant's objection, concluding that the state's questioning of Ventura was appropriate to establish his bias, if any, against correction officials. The

jury was thereafter recalled and Ventura repeated his testimony regarding the lawsuits.

"[C]ross-examination is the principal means by which the credibility of witnesses and the truth of their testimony is tested." *State* v. *Lee*, 229 Conn. 60, 69, 640 A.2d 553 (1994). Although only relevant evidence may be elicited through cross-examination; *State* v. *Kelley*, 229 Conn. 557, 562, 643 A.2d 854 (1994); "[e]vidence tending to show motive, bias or interest of an important witness is never collateral or irrelevant. [Indeed, i]t may be . . . the very key to an intelligent appraisal of the testimony of the [witness]." (Internal quotation marks omitted.) *State* v. *Colton*, 227 Conn. 231, 248, 630 A.2d 577 (1993). Accordingly, cross-examination to elicit facts tending to show that a witness' testimony was motivated by bias may not be unduly restricted. Id., 249; see also *State* v. *Francis*, 228 Conn. 118, 123, 635 A.2d 762 (1993). "Bias may consist of a friendly feeling or of hostility. It may be shown in a variety of ways." *State* v. *Asherman*, 193 Conn. 695, 719, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985).

The trial court reasonably could have concluded that Ventura's lawsuits claiming improper treatment by department of correction officials evinced a hostility toward those officials and that, in view of the defendant's claim of mistreatment by Mercoucheff on February 2, 1993, Ventura's bias, if any, toward those authorities was relevant to the case. Furthermore, the fact that Mercoucheff was not named in any of Ventura's lawsuits did not render irrelevant the state's contention that Ventura harbored a general bias against correction officials stemming from his own alleged mistreatment while in their custody. "The trial court has broad discretion in deciding the relevancy of evidence as it pertains to cross-examination . . . and on appeal the appellant has the burden of establishing that there has been an

erroneous ruling which was probably harmful to him."
(Citations omitted.) *State* v. *Jones*, 167 Conn. 228, 232–
33, 355 A.2d 95 (1974); *Pet* v. *Dept. of Health Services*,
228 Conn. 651, 663, 638 A.2d 6 (1994). Because the
trial court reasonably could have determined that the
lawsuits filed by Ventura provided a basis for the jury
to conclude that Ventura's testimony was influenced
by his hostility toward the department of correction and
its officials, the trial court did not abuse its discretion in
allowing the state to cross-examine Ventura concerning
those lawsuits.

## IV

The defendant next contends that the trial court
improperly permitted the state to cross-examine him
as to false statements that he allegedly had made to
prison officials.[23] We are unpersuaded.

The state notified the defendant, prior to his testi-
mony regarding the arson charge, that it intended to
question him, for impeachment purposes only, about
four separate occasions on which he had allegedly given
false information to correction officers.[24] The defendant
denied having made false statements on three of the
four occasions and, on that ground, objected to being
asked any questions about those three incidents. The
trial court overruled the defendant's objection to the
line of questioning contemplated by the state and the
defendant on cross-examination denied that he had
given false information to correction officers on three
of the four occasions.[25]

---

[23] None of these alleged incidents occurred at the New Haven correc-
tional center.

[24] In each case, prison officials prepared a disciplinary report citing the
defendant for having provided a false statement to correction officers.

[25] The defendant acknowledged that he had provided false information to
correction officers on one of the four occasions, and he admitted to having
done so on cross-examination.

"The right to cross-examine a witness concerning specific acts of misconduct is limited in three distinct ways. First, cross-examination may only extend to specific acts of misconduct other than a felony conviction if those acts bear a special significance upon the issue of veracity . . . . Second, [w]hether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discretion of the trial court. . . . Third, extrinsic evidence of such acts is inadmissible." (Citations omitted; internal quotation marks omitted.) *State* v. *Martin*, 201 Conn. 74, 85–86, 513 A.2d 116 (1986); see also *Demers* v. *State*, 209 Conn. 143, 156–57, 547 A.2d 28 (1988).

The defendant does not dispute that cross-examination regarding prior false statements is generally permissible because such misconduct is probative of the witness' veracity. The defendant claims, rather, that the state should not have been allowed to question him about three of the alleged false statements because he had already indicated that he would, on cross-examination, deny that any of those statements were untrue. The defendant's argument is predicated on the fact that "if on cross-examination a witness denies having engaged in . . . prior acts of misconduct, the examiner must accept the answer and is prohibited from offering extrinsic evidence to prove such acts." *Demers* v. *State*, supra, 209 Conn. 157.

We are persuaded that the trial court did not abuse its discretion in permitting the state to cross-examine the defendant regarding all four statements even though the defendant, through counsel, had informed the court that he had not provided false information on three of the four occasions. The state, relying on the findings contained in the prison disciplinary reports, had a good faith basis to believe otherwise. See, e.g., *State* v. *Barnes*, 232 Conn. 740, 747–48, 657 A.2d 611 (1995); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. Sup.

1994) § 7.22.1, pp. 86–87. Furthermore, the state had had no occasion, prior to the defendant's trial testimony, to question him under oath about his alleged false statements.

The defendant also contends that the trial court permitted the state too much leeway in its cross-examination concerning the four incidents. Specifically, he claims that the trial court should have prohibited any further probing by the prosecutor once the defendant had denied having engaged in any misconduct.[26] Contrary to the defendant's argument, however, the trial court was within its discretion in allowing the state some latitude in its cross-examination on this issue. " '[I]f the witness stands his ground and denies the alleged misconduct, the examiner must "take his answer" not that he may not cross-examine to extract an admission, but in the sense that he may not call other witnesses to prove the discrediting acts.' McCormick, [Evidence (3d Ed.)] § 42." *State* v. *Horton*, 8 Conn. App. 376, 380, 513 A.2d 168, cert. denied, 201 Conn. 813, 517 A.2d 631 (1986); see also *State* v. *McIntosh*, 12 Conn. App. 179, 185, 530 A.2d 191, cert. denied, 205 Conn. 808, 532 A.2d 77 (1987). The record indicates that the state's questioning was very brief and to the point, and that the state did not unduly press the issue once the defendant had denied the misconduct. The defendant's claim to the contrary, therefore, is meritless.

V

The defendant next challenges the trial court's denial of his motion for a psychiatric examination made pursuant to General Statutes § 17a-566[27] prior to sentencing. This claim also is without merit.

---

[26] The defendant also claims that the state should not have referred to the disciplinary reports in its formulation of its questions about the alleged false statements. Because the defendant did not object on this ground at trial, we decline to review the claim on appeal.

[27] General Statutes § 17a-566 provides in relevant part: "(a) Except as provided in section 17a-574 any court prior to sentencing a person convicted

The defendant moved for an examination under § 17a-566 on the basis of information contained in the presentence report and in a written evaluation of the defendant by a psychologist retained by the defense. These reports raised the possibility that the defendant might be suffering from a mental illness. The trial court, characterizing the reports as equivocal and noncommittal on the issue of the defendant's mental condition, concluded that it did not appear that the defendant was mentally ill and, accordingly, denied the defendant's motion.[28] The trial court, however, did order as a condition of the defendant's probationary sentence that he receive "any psychiatric or psychological testing as may be deemed appropriate."

As indicated by the trial court, neither the presentence report nor the psychological evaluation of the defendant concluded that he was mentally ill. Rather, the reports merely raised that possibility.[29] The trial court, moreover, had been fully apprised of the defendant's personal history and background and, in addition, had observed the defendant's testimony and demeanor throughout the trial and could draw its own conclusions. In the absence of a far more convincing showing by the defendant, therefore, we cannot say that the trial court was incorrect when it concluded that the defendant did not appear to be suffering from a mental illness.

of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers . . . may if it appears to the court that such person is mentally ill and dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the institute. . . ."

[28] The trial court did not address the issue of whether the defendant also posed a danger to himself or others. See General Statutes § 17a-566.

[29] We have conducted an independent review of those reports and concur with the trial court's characterization of them.

The defendant also argues that the trial court reasonably could not have concluded that he did not appear to be mentally ill, on the one hand, and, on the other, direct him, as a condition of his probation, to comply with any psychological testing or evaluation that *might be deemed appropriate* by his probation officer. On the contrary, the probationary condition imposed by the trial court is entirely consistent both with a conclusion that there remained a *possibility* that the defendant might benefit from psychiatric testing or evaluation, and with the trial court's determination that the defendant *did not appear* to be mentally ill. The trial court, therefore, did not abuse its discretion in denying the defendant's motion made pursuant to § 17a-566. See *State* v. *DeAngelis*, 200 Conn. 224, 241, 511 A.2d 310 (1986).

## VI

The defendant also claims that the trial court improperly instructed the jury that a reasonable doubt "is a doubt for which a valid reason can be assigned." Because the defendant failed to preserve this claim, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"The challenged instruction is identical to the instruction recently approved by this court in *State* v. *Gomez*, 225 Conn. 347, 353, 622 A.2d 1014 (1993), and numerous cases cited therein. In our previous cases, we concluded that this instruction did not decrease the state's burden of proof when viewed in the context of the charge as a whole. Id., 354. In this case, the jury charge, taken as a whole, presents an accurate definition of proof beyond a reasonable doubt." *State* v. *Williams*, 231 Conn. 235, 254 n.22, 645 A.2d 999 (1994). Accordingly, the defendant's claim must fail.

## VII

Finally, the defendant asserts that he was deprived of a fair trial due to improper closing argument by the state. The defendant also concedes that this claim was not properly preserved at trial, but contends that review is appropriate under *State* v. *Golding*, supra, 213 Conn. 239–40, or, alternatively, under the plain error doctrine.[30] We will review the claim under *Golding* but we do not agree that the defendant was deprived of a fair trial.

The defendant's claim is founded on certain statements made by the state during closing argument, in which the prosecutor purportedly made reference to facts not in evidence. The defendant also alleges that the prosecutor deprived the defendant of a fair trial by vouching for the credibility of witnesses, claiming that the defense case contained "smoke screens" and "red herrings," calling the defendant a "con man," commenting on matters not in evidence, commingling the evidence, testifying as an expert witness and injecting extraneous matters. A careful review of the record reveals that each of these claims is either entirely unsupported or does not approach the level of a due process violation. The challenged remarks, to the extent that they were made and were inappropriate, were isolated and brief, and did not reflect a pattern of misconduct. See *State* v. *Williams*, supra, 231 Conn. 245–47. They certainly did not deprive the defendant of a fair trial; see *State* v. *Golding*, supra, 213 Conn. 239–40; or otherwise implicate the fairness and integrity of and public confidence in the judicial proceedings. See *State* v. *Day*, 233 Conn. 813, 849, 661 A.2d 539 (1995). The defendant,

---

[30] Practice Book § 4185 provides in relevant part: "Errors Considered

"The court on appeal shall not be bound to consider a claim unless it was distinctly raised at trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

therefore, cannot prevail on his claim of impropriety by the state in its closing argument.

The judgment is affirmed.

In this opinion PETERS, C. J., and NORCOTT, J., concurred.

PALMER, J., with whom BERDON, J., joins, dissenting. I disagree with the conclusion of the majority that the defendant was not entitled to a severance when he renewed his objection to consolidation at the conclusion of the evidence. In my view, the consolidation of the two charges impermissibly burdened the defendant's constitutional right to refrain from testifying with respect to the assault count. Since I agree with the majority's resolution of the defendant's other claims, however, I dissent only as to part I B of the majority opinion.

Although most of the pertinent facts and procedural history are set forth in the majority opinion, some further elaboration is necessary to place the defendant's severance claim in proper context. As the majority has indicated, the defendant objected to the state's pretrial motion for consolidation on the ground, inter alia, that joinder would unfairly interfere with his right both to testify in the arson case and not to testify in the assault case. Specifically, the defendant asserted that he had a strong need to testify in the arson case to explain that he had not intended to destroy or damage the correctional center, proof of which is an element of the crime of arson in the first degree; see footnote 2 of the majority opinion; and, conversely, that he had good reason not to testify in the assault case, both because the state already planned to introduce his exculpatory explanation for the urine-throwing incident and to prevent the introduction of his eleven felony convictions in that case. At that time, however, some two weeks

before the commencement of the trial evidence, the defendant candidly acknowledged that he could not yet definitively state whether he would, in fact, testify in the arson case but not in the assault case. In light of the defendant's inability to commit to a decision at that juncture, the trial court overruled the defendant's objection to consolidation without prejudice to its renewal at a later time.

Several days thereafter, however, the defendant was notified by the state that it intended to introduce, in its case-in-chief in the assault case, testimony by Trooper Philip Pilletere that he had overheard the defendant threaten to "get" Officer Tanya Mercoucheff. This evidence, unknown to the defendant when he informed the court of his intention to refrain from testifying on the assault count, provided the defendant with compelling new reason to testify with respect to that count, namely, to rebut the state's claim that he had assaulted Mercoucheff in retaliation for her treatment of him on February 2, 1993.

Trial thereafter commenced, with the state proceeding first on the arson count. Pilletere testified about his investigation of the fire, but not about the defendant's threat against Mercoucheff. The prosecutor again represented, however, that the state intended to recall Pilletere during its case-in-chief on the assault count for the purpose of eliciting Pilletere's testimony about the defendant's threat to "get" Mercoucheff.

At the conclusion of the state's evidence on the arson charge, the defendant testified in his own defense with respect to that count. Although the defendant admitted setting fire to his mattress on February 2, he asserted that he had done so not with the intent to destroy or damage the building but, rather, only for the purpose of gaining the attention of prison officials. At the conclusion of the arson case evidence, the prosecutor once

again reiterated his intent to recall Pilletere to testify in the assault case concerning the defendant's threat against Mercoucheff.

The state called only three witnesses in the assault case, which took less than one day to complete. One of these witnesses, Lieutenant Melvin Wells, testified about his conversation with the defendant, reciting for the jury the defendant's exculpatory version of the urine-throwing incident. Notwithstanding the state's earlier representations, however, it elected not to call Pilletere, or anyone else, to testify regarding the defendant's threat to "get" Mercoucheff.

The defendant, who then rested without introducing any evidence on the assault count, immediately renewed his objection to consolidation of the two counts.[1] He indicated that he had intended to testify as to that count in order to explain his alleged threat against Mercoucheff, but that he had elected not to do so when, to his surprise, the state rested without introducing any evidence of that threat. The defendant, in support of his motion, claimed that joinder of the two counts constituted an unreasonable interference with his right to testify with respect to the arson count and to refrain from testifying with respect to the assault count because the jury could not reasonably be expected to disregard the defendant's lengthy criminal record in its consideration of the assault count. The trial court denied the defendant's renewed application to sever the assault count and proceeded to charge the jury, which returned guilty verdicts on both counts.

In evaluating a request for severance founded upon a claim that the defendant wishes to testify as to one charge but not as to another, we have "approved of

---

[1] As the majority has noted, the defendant's renewed objection to consolidation at the close of the evidence was, in effect, a motion for a mistrial on the assault count.

the analysis employed by the Court of Appeals for the District of Columbia in *Baker* v. *United States*, 401 F.2d 958, 977 (D.C. Cir. 1968), cert. denied, 400 U.S. 965, 91 S. Ct. 367, 27 L. Ed. 2d 384 (1970). *Baker* held that 'no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying.' " *State* v. *Schroff*, 198 Conn. 405, 409, 503 A.2d 167 (1986); see also *State* v. *Rodgers*, 198 Conn. 53, 65, 502 A.2d 360 (1985). Furthermore, a defendant is not entitled to a new trial based upon the trial court's denial of a motion to sever unless it can be established that consolidation of the charges so adversely affected the defendant's interest in testifying with respect to one charge but not another that, despite proper limiting instructions, the joint trial "resulted in a substantial injustice or prejudice." *State* v. *Schroff*, supra, 410. I am persuaded that the defendant, at the time he renewed his request for a severance at the conclusion of the evidence, satisfied his heavy burden of demonstrating, first, a strong need to testify with respect to the arson count and to refrain from testifying with respect to the assault count, and second, substantial prejudice flowing from the joinder of the two charges for trial notwithstanding the limiting instructions of the trial court.[2]

---

[2] I agree with the majority that the trial court properly denied the defendant's pretrial request for a severance under *State* v. *Schroff*, supra, 198 Conn.

In his argument for a severance at the conclusion of the evidence, the defendant articulated compelling reasons why he had testified in the arson case but not in the assault case. With respect to the arson charge, he explained that his testimony was necessary to apprise the jury that although he had set the fire, he had not intended to destroy or damage the prison facility, an essential element of first degree arson.[3] On the other hand, the defendant explained that he had no need to testify with respect to the assault count because the state had already introduced his exculpatory version of the urine-throwing incident through the testimony of Wells, and that he had strong reason not to testify as to the assault count in order to prevent the introduction of his eleven prior felony convictions in that case. Since the record supports the explanation propounded by the defendant, the defendant satisfied the requirement that he had " 'both important testimony to give concerning one count and strong need to refrain from testifying on the other.' "[4] Id., 409.

405, because at that time the defendant could not definitively represent to the court that he would testify as to one count but not the other.

[3] The defendant's statement to Pilletere did not include his explanation that he had not intended to damage or destroy the building.

[1] I disagree with the majority that the doctrine enunciated in *State* v. *Schroff*, supra, 198 Conn. 405, is inapplicable to the defendant's renewed objection to consolidation simply because the objection was not made until after the defendant had testified as to the arson count and had elected not to testify with respect to the assault count. Contrary to the conclusion of the majority, the timing of the defendant's renewed request for a severance is not dispositive of his claim under *Schroff*.

In the usual case, where a joint trial of two different charges has not been bifurcated, the state presents its case-in-chief as to both charges, followed by any evidence that the defendant chooses to adduce in defense thereof. In contrast to this case, therefore, a defendant generally will be required to decide whether to testify as to one or both of the charges at the same time. In such circumstances, when a defendant has demonstrated a strong need to testify with respect to one count and compelling reason not to testify with respect to the other, the adverse effect of the consolidation of the two charges on the accused's "free choice with respect to testifying"; id., 409; arises *before* any trial testimony by the defendant. The majority,

It must also be determined whether joinder of the counts was so harmful to the defendant in light of his demonstrated need both to testify in the arson case and to refrain from testifying in the assault case that a severance was required. I agree with the defendant that the introduction of his extensive criminal record in the arson case resulted in substantial prejudice to him in the assault case. "Evidence is prejudicial 'when it tends to have some adverse effect upon a defendant beyond

erroneously in my view, suggests that this is the only context in which a *Schroff* claim may be made.

The severance claim in this case arises in a different setting because the trial of the two charges had been bifurcated, with the arson case being tried first, followed by the assault case. Thus, the defendant was required to decide whether to testify with respect to the arson count before the state had presented any evidence on the assault count. Reasonably concluding that he had a strong need to testify with respect to the arson charge, he elected to do so. At that stage of the trial, the defendant could not properly have renewed his severance claim under *Schroff* because he did not have such a claim to make: he reasonably believed, in light of the state's repeated and unequivocal representations that it intended to introduce the defendant's alleged threat against Mercoucheff in the assault case, that it would be necessary for him to testify as to the assault charge. When, to the defendant's surprise, the state reversed itself and rested its case on the assault count without introducing the alleged threat, the defendant immediately (1) informed the trial court that he would not be testifying due to the state's change of position and (2) renewed his objection to consolidation of the two charges on the ground that the jury's consideration of the assault count would be unfair in light of his decision not to testify with respect to that count.

Although presented in a somewhat unusual procedural context, the severance issue raised by this case implicates precisely the interests that are protected under *Schroff*. The doctrine set forth in *Schroff* is predicated on the principle that the state may not unduly burden a defendant's right either to refrain from testifying; see, e.g., *Griffin* v. *California*, 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965) (statement by court or prosecutor inviting jury to draw adverse inference from defendant's failure to testify violates constitution "as a penalty imposed . . . for exercising a constitutional privilege"); or to testify in his own defense. See, e.g., *Rock* v. *Arkansas*, 483 U.S. 44, 51–53, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) (criminal defendant's right to testify guaranteed under fifth, sixth and fourteenth amendments to federal constitution). In the present case, consolidation of the two charges impermissibly burdened the defendant's right to remain silent with respect to the assault count because, notwithstanding his assertion of that right,

tending to prove the fact or issue that justified its admission into evidence.'" *State* v. *Graham*, 200 Conn. 9, 12, 509 A.2d 493 (1986), quoting *United States* v. *Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). As this court has previously acknowledged, "the prejudice generated by admission of [misconduct evidence or evidence of a prior conviction for impeachment purposes] is high." *State* v. *Jones*, 234 Conn. 324, 344–45, 662 A.2d 1199 (1995); see also *State* v. *Cooper*, 227 Conn. 417, 427, 630 A.2d 1043 (1993); *State* v. *Nardini*, 187 Conn. 513, 523, 447 A.2d 396 (1982). It is inarguable that the prejudicial effect of such evidence is considerable when, as here, the jury is apprised that the defendant had previously been convicted of a large number of felony offenses.

Furthermore, in contrast to the limited admissibility of those prior convictions in the arson case, they were not admissible *for any reason* in the assault case.

the jury had nevertheless been apprised of his eleven prior felony convictions during the trial of the arson case. The mere fact that the unfair burdening of the defendant's testimonial rights arose *after*, rather than before, his decision to testify as to one count but not the other does not render *Schroff* inapplicable, for the effect of the consolidation of the two counts on the defendant's "free choice with respect to testifying" is exactly the same in either case: the unreasonable impairment of the defendant's constitutionally protected right to testify as to the arson count and to refrain from testifying with respect to the assault count. Furthermore, as previously discussed, the defendant's objection to consolidation cannot be considered untimely because the defendant established *both* that joinder of the charges unfairly infringed upon his right to testify as to one count but not another *and* that the objection to consolidation could not reasonably have been made earlier in light of the state's representations that it intended to introduce evidence necessitating the defendant's testimony in response.

I also disagree with the majority's conclusion that the defendant did not properly raise this claim in his renewed objection to consolidation at the close of the evidence. On the contrary, the defendant, in support of his request for a severance, explained that consolidation of the two counts would permit the jury to decide the assault case with full knowledge of the defendant's eleven prior felony convictions even though he had elected not to testify with respect to the assault count. See footnote 18 of the majority opinion.

Although the trial court admonished the jury that it was not to consider the arson case evidence or the defendant's eleven felony convictions in its consideration of the assault case, I think it unlikely that the jury was fully able to ignore the defendant's lengthy record of felony violations. On occasion, even limiting instructions are not sufficient to ameliorate the harm arising from the introduction of a prior criminal record. See, e.g., *State* v. *Wright*, 198 Conn. 273, 278–79, 502 A.2d 911 (1986); *State* v. *Keiser*, 196 Conn. 122, 129–31, 491 A.2d 382 (1985).

In addition, it would have been especially difficult for the jury, in the particular circumstances presented, to disregard the defendant's prior criminal history in its determination of the assault case. The jury, having been instructed that it could properly consider the defendant's felony convictions in assessing his testimony on the arson charge, also had to evaluate the credibility of his explanation to Wells that he did not intentionally strike Mercoucheff with the urine. Indeed, the plausibility of the defendant's exculpatory version of the urine-throwing incident was the only contested issue in the assault case. Thus, the jury was instructed that while it *could* properly consider the defendant's prior felony convictions in evaluating the believability of his in-court explanation for the alleged arson, it *could not* properly consider his lengthy criminal record in determining the credibility of his out-of-court explanation for the alleged assault. It is at best problematic whether the jury could have so compartmentalized its review of the evidence.[5]

---

[5] The majority asserts that the defendant was not likely to have been unduly prejudiced in his defense of the assault case by virtue of the introduction of his numerous felony convictions in the arson case for two additional reasons: first, because the jury was aware that the defendant was incarcerated in the segregation unit of a correctional facility when the alleged crime was committed, and second, because the defendant acknowledged that he had thrown the urine intentionally, albeit not at Mercoucheff. I fail to see why his

Finally, I disagree with the majority that considerations of judicial economy and efficiency served by joinder of the counts outweighed the defendant's interest in ensuring that his right to testify with respect to one count and not the other was not impaired. Although the practical realities of a burdened judicial system require that significant weight be afforded those considerations, I nevertheless believe that the requested severance was, under the circumstances, required. My conclusion rests in no small measure on the fact that the state's evidence on the assault count required the testimony of only three witnesses and lasted less than one day.

Considerations of judicial economy are concededly greatest when, as here, the defendant does not establish a strong need for severance until after the state has concluded its evidence. Under such circumstances, the showing of need for a severance must not only be especially strong, but the defendant must also have compelling reason why that need was not clearly articulated earlier in the proceedings, preferably before the commencement of trial. I am persuaded, however, that the defendant has satisfied this difficult burden in the peculiar circumstances of this case. The defendant, it is true, did not renew his objection to consolidation until the state had rested its case on the assault count. *But he had no cause to do so at any earlier stage of the trial* because the state, on three separate occasions, had represented in open court that it intended to introduce,

---

confinement, or the conditions thereof, have any bearing on the resolution of this case; for all the jury knew, the defendant was incarcerated awaiting trial on charges for which he was eventually exonerated. Moreover, the fact that the defendant admitted to throwing the urine at another inmate is not proof that he committed the more serious crime with which he was charged, assault on a correctional officer. Although I readily concede that the defendant is "[no] Mary Poppins," he was nevertheless entitled to the same constitutional protections that we all enjoy, including the right to expect that his decision to remain silent would not be unreasonably impaired.

in its case-in-chief on the assault count, testimony by Pilletere concerning the defendant's threat to "get" Mercoucheff, powerful evidence of motive to which the defendant understandably believed a response was necessary.[6] Thus, the defendant could not reasonably have renewed his severance claim any sooner than he did.[7]

In summary, the defendant, when he renewed his severance motion at the conclusion of the evidence, had established: (1) a strong need to testify with respect to the arson count and to refrain from testifying with respect to the assault count; (2) a high degree of prejudice resulting from a joint trial in light of his need both to testify as to one count and not to testify as to the other; (3) a persuasive reason why he could not have sooner demonstrated his strong need for a severance; and (4) relatively less compelling considerations of judicial economy given the brevity of the assault case. Thus, I am persuaded that, in the unusual factual and procedural context presented, the consolidation of the two charges impermissibly infringed upon the defendant's right to refrain from testifying with respect to the assault count and, consequently, that he is entitled to a new trial on that count.[8] I therefore respectfully dissent.

---

[6] As previously indicated, the state had reiterated its intention to introduce the defendant's threat to "get" Mercoucheff as recently as immediately prior to the commencement of the evidence on the assault count. There is nothing in the record to indicate, however, and I do not suggest, that the state's decision to rest without calling Pilletere was made in bad faith.

[7] I recognize the special difficulty that confronted the able trial judge in this case due to the fact that the defendant's renewed claim for severance was not raised until so late in the trial. Generally, however, a severance claim based upon a defendant's need both to testify with respect to one count and to refrain from testifying with respect to another will be susceptible to a definitive resolution much earlier in the proceedings than occurred in this case.

[8] I agree with the majority that the defendant is not entitled to a new trial on the arson count because consolidation of the two charges for trial did not unduly prejudice the defendant with respect to that charge.