STATE OF CONNECTICUT *v.* JUAN MALDONADO
(AC 18016)

Foti, Sullivan and Daly, Js.

Argued December 11, 1998—officially released February 9, 1999

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Eileen McCarthy Geel*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Vicki Melchiorre*, assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Juan Maldonado, appeals from the judgment of conviction, rendered after a trial by a three judge panel,[1] of murder in violation of General Statutes § 53a-54a, possession of a sawed-off shotgun in violation of General Statutes § 53a-211 and assault in the second degree in violation of General Statutes § 53a-60. On appeal, the defendant claims that the trial court abused its discretion in denying his motion for a presentence psychiatric examination that he filed pursuant to General Statutes § 17a-566.[2] We affirm the judgment of the trial court.

---

[1] The three judges were impaneled pursuant to General Statutes § 54-82, which provides in relevant part: "(a) In any criminal case, prosecution or proceeding, the party accused may, if he so elects when called upon to plead, be tried by the court instead of by the jury; and, in such case, the court shall have jurisdiction to hear and try such case and render judgment and sentence thereon.

"(b) If the accused is charged with a crime punishable by death or imprisonment for life and elects to be tried by the court, the court shall be composed of three judges to be designated by the Chief Court Administrator, or his designee, who shall name one such judge to preside over the trial. Such judges, or a majority of them, shall have power to decide all questions of law and fact arising upon the trial and render judgment accordingly. . . ."

[2] General Statutes § 17a-566 (a) provides in relevant part: "Except as provided in section 17a-574 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers . . . *may if it appears to the court that*

The trial court reasonably could have found the following facts. In July, 1994, the defendant was living with his girlfriend, Marisol Santiago, in a third floor apartment on Bond Street in Hartford. On the morning of July 29, 1994, the defendant accused Santiago of being unfaithful with Armando Rivera, the manager of a grocery store located on the first floor of the defendant's apartment building. The defendant told Santiago that he was going to kill Rivera, punched her and threw her to the floor. The defendant retrieved a knife from the kitchen and threatened Santiago with it. Santiago grabbed the knife, closing her hand around its blade. The defendant then pulled the blade upward, severely cutting the area between Santiago's thumb and forefinger. The wound caused extensive bleeding and required several stitches. The defendant left the apartment before the police could apprehend him.

*such person has psychiatric disabilities and is dangerous to himself or others,* upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the division. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the division for additional examination or should be sentenced in accordance with the conviction. Such examination shall be conducted and the report made to the court not later than fifteen days after the order for the examination. Such examination may be conducted at a correctional facility if the defendant is confined or it may be conducted on an outpatient basis at the division or other appropriate location. If the report recommends additional examination at the diagnostic unit, the court may, after a hearing, order the convicted defendant committed to the diagnostic unit of the division for a period not to exceed sixty days, except as provided in section 17a-567 provided the hearing may be waived by the defendant. Such commitment shall not be effective until the director certifies to the court that space is available at the diagnostic unit. While confined in said diagnostic unit, the defendant shall be given a complete physical and psychiatric examination by the staff of the unit and may receive medication and treatment without his consent. The director shall have authority to procure all court records, institutional records and probation or other reports which provide information about the defendant." (Emphasis added.)

Several hours later, the defendant retrieved a sawed-off shotgun from a garage near his apartment and went to the grocery store. As the defendant approached, he observed Rivera come out of the store and then go back inside. After the defendant entered the store, he and Rivera struggled over the shotgun and one round was fired into the floor. Rivera then fled with the defendant in pursuit. The defendant then shot Rivera as Rivera yelled: "My son, my son." The defendant fired a second time, hitting Rivera and causing him to fall to the ground. The defendant then approached Rivera, reloaded the shotgun with two more cartridges and shot Rivera once in the head, saying: "So you stop screwing around with women."

Later that day, the defendant went grocery shopping with a friend. When they finished shopping, they drank beer and smoked marijuana together. The defendant, who had talked about the shooting, admitted to his friend on the following morning that he had committed the murder. He thereafter went to New Jersey, where he worked at an auto body shop using a different name. In January, 1995, the defendant was arrested and returned to Connecticut where, after voluntarily waiving his right to remain silent, he gave an oral and written confession in which he admitted to the killing.

The defendant was convicted on October 18, 1996, after the trial court unanimously concluded that the state had proven the defendant guilty beyond a reasonable doubt of all three offenses charged. In addition, the trial court concluded that the evidence submitted by the defendant was insufficient to prove, by a fair preponderance of the evidence, his affirmative defense of mental disease or defect. On December 5, 1996, the defendant moved, pursuant to § 17a-566, for permission to have a psychiatric examination prior to sentencing. Following a hearing on that motion, the trial court unanimously concluded that the defendant was not a danger

to others and, by a majority, concluded that he was not a danger to himself. Accordingly, the trial court denied the defendant's motion.

The sole issue before this court is whether the trial court abused its discretion in denying the defendant's motion for a presentence psychiatric examination pursuant to § 17a-566. The defendant alleges that the trial court's denial was a "plain, obvious abuse of discretion . . . not amply supported by the record and violates logic and reason." We do not agree.

A court may order a psychiatric evaluation of a defendant only if it appears to the court that such person has a psychiatric disability and is a danger to himself or others. General Statutes § 17a-566. The trial court, acting on a motion pursuant to § 17a-566, may rely on evidence such as psychiatric reports, the defendant's personal history and background, as well as the defendant's testimony and demeanor at trial. See *State* v. *Chance*, 236 Conn. 31, 62, 671 A.2d 323 (1996). It is within the discretion of the trial court to grant or deny such a motion. *State* v. *DeAngelis*, 200 Conn. 224, 241, 511 A.2d 310 (1986).

"The purpose of an examination under [§ 17a-566] is not to determine competency to be sentenced. That section presumes that a convicted defendant will be sentenced. The purpose of an examination under [§ 17a-566] is to allow the commissioner of mental health to make recommendations as to certain offenders concerning the sentence to be imposed and the place of confinement." Id., 238–40. Nevertheless, "[w]here the court has adequate psychiatric documentation of the defendant's mental condition, there is no need for it to utilize the statutory provisions concerning further examinations. . . . The presence of some degree of mental illness does not prevent or avoid the imposition of sentence by the court nor does it necessarily require

that the court 'blindly and automatically implement the statutory machinery' providing for psychiatric examinations." (Citation omitted.) *State* v. *Gates*, 198 Conn. 397, 405, 503 A.2d 163 (1986).

The contested affirmative defense, the pivotal issue at trial, was whether the defendant lacked capacity, due to a mental disease or defect, to appreciate the wrongfulness of his conduct or to control his conduct within the requirement of the law.[3] In support of his defense, the defendant presented the testimony of two psychiatrists, Peter Zeman and Donald Grayson, along with records from the Capitol Region Mental Health Center (health center) and mental health treatment records from the department of correction. The defendant agrees that the evidence presented during the trial on his affirmative defense is relevant to the trial court's § 17a-566 determination.

The health center records disclose that the defendant first sought a diagnostic evaluation in October, 1993. He complained that in 1990, "Ramon, a black shadow man," first came to him, calling his name and was thereafter present on occasion. The defendant denied receiving instructions from Ramon. The defendant was discharged from the health center for failing to attend the program. His discharge summary showed that the defendant had made conflicting statements, and it concluded that it was unlikely that he suffered from a schizophrenic disorder and indicated a primary diagnosis of psychosis, secondary to cocaine abuse.

Before trial, both Zeman and Grayson submitted reports indicating that they believed that the murder had been committed while the defendant was in a psychotic state that was the result of chronic paranoid schizophrenic illness. At trial, however, both acknowl-

_____

[3] The trial court's unanimous conclusion that the defendant had not proven his affirmative defense of mental disease or defect is not an issue on appeal.

edged serious reservations about the defendant's credibility, particularly with regard to his drug and alcohol abuse. In discussions with Zeman, the defendant indicated that he believed that he had killed "Ramon, the shadow man." The defendant, however, never mentioned Ramon in his confession and never indicated a manifestation of the shadow man between the time of the murder and his apprehension in 1995. In addition, the defendant did not disclose to Zeman that he had threatened to kill Rivera because of his jealousy, or that he had searched out the murder weapon, secreted it in a canvas bag and concealed it following the murder. He also failed to tell Zeman about going grocery shopping, drinking beer and smoking marijuana with his friend after the murder and about planning and executing his move to New Jersey.

Grayson also based his initial diagnosis on the defendant's self-reported history of a psychotic illness. He, as did Zeman, questioned the defendant's credibility concerning his drug and alcohol abuse. Grayson indicated that the defendant was not actively psychotic when he gave his confession and that the ingestion of cocaine can cause a "cocaine psychosis" that is indistinguishable from the clinical presentation of paranoid schizophrenia. The defendant did not tell Grayson of his activities both prior to, and subsequent to, the murder. Grayson indicated that both before and after the murder, the defendant acted in a competent fashion and showed that he was more in touch with reality than Grayson had originally thought. When told of the defendant's final words to the victim, Grayson concluded that it would be inconsistent for the defendant to have thought Rivera was Ramon.

In its memorandum of decision, the trial court found: "The indispensable evidence relied upon by Zeman and Grayson was the defendant's portrayal of Ramon, the shadow man. Both doctors agreed that it was self-serv-

ing and both agreed that cocaine abuse could provide the auditory and visual hallucinations purportedly suffered by the defendant. In his testimony, Grayson expressed serious reservation about the diagnosis he [first] arrived at . . . . He acknowledged that the defendant's coherence and lucidity prior to and subsequent to the shooting plus his history of mistruths about cocaine abuse seriously impugned his diagnosis of paranoid schizophrenic illness. Grayson acknowledged that cocaine intoxication can produce symptoms of exacerbated acute paranoid schizophrenia."

Again, the defendant agrees that the evidence presented during the trial is relevant to the trial court's determination under § 17a-566. "The acceptance or rejection of the opinions of the expert witness is a matter peculiarly within the province of the trier of fact and its determination will be accorded great deference by this court." (Internal quotation marks omitted.) *Feigenbaum* v. *Waterbury*, 20 Conn. App. 148, 152, 565 A.2d 5 (1989). The defendant concedes that "[c]ertainly the trial court was free to disbelieve any or all of the psychiatric testimony" presented both at trial and during the § 17a-566 hearing.[4] We agree.

The defendant argues, however, that the trial court ignored or failed to consider mental health treatment records from the department of correction.[5] The defendant argues that this evidence "shows [the defendant's] ongoing and serious mental illness and intermittent suicidal thoughts and gestures." He argues that the state failed to produce any evidence in rebuttal of these records.

---

[4] In addition to testifying at trial, Zeman testified again at the § 17a-566 hearing.

[5] The defendant also presented a supplemental hearing report from Zeman, a letter from the office of adult probation and an incident report from the department of correction dated August 2, 1996.

It must be noted, however, that in denying the defendant's motion for a presentence psychiatric examination, the trial court did not file a memorandum of decision.[6] In an unsigned transcript, the trial court writes simply that it had concluded, "based on the testimony and the evidence, that the defendant is not a present danger to others. And the majority of the panel does not find that he is presently a danger to himself." Therefore, the weight that the trial court gave to the evidence from the department of correction cannot be determined. Further, we cannot address the trial court's discretion in evaluating that evidence as a relevant factor in predicting the defendant's future behavior. The defendant has failed to demonstrate that the trial court abused its discretion in denying his motion.

The defendant also argues that the trial court may have applied the wrong standard of proof in denying his motion for a presentence psychiatric evaluation. He argues that a mere facial showing is sufficient. We presume that the trial court employed the proper standard in following the law. See *Bank of Boston Connecticut* v. *Avon Meadow Associates*, 40 Conn. App. 536, 543, 671 A.2d 1310, cert. denied, 237 Conn. 905, 674 A.2d 1329 (1996) (unless contrary appears in record, we presume trial court acted properly and considered applicable legal principles). Absent a record to the contrary, we presume that the trial court considered all of the evidence regarding the defendant's mental state presented both at the trial and at the § 17a-566 hearing.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] While the defendant argues that the trial court did not sufficiently articulate its decision, the record does not disclose that a motion for articulation was filed.