[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
STATE OF CONNECTICUT JUAN MALDONADO
 Date of Sentence March 7, 1997 Date of Application March 7, 1997 Date Application Filed March 11, 1997 Date of Decision May 28, 2002
Application for review of sentence imposed by the Superior Court, Judicial District of Hartford.
Docket No. CR 95-468070.
Richard Lynch Defense Counsel, for Petitioner
Victor Carlucci, Jr. Assistant State's Attorney, for the State.
Sentence Affirmed.
 BY THE DIVISION
Following a trial to a three judge panel, the petitioner was convicted of murder, possession of a sawed off shotgun and assault, 2nd degree.
He was sentenced to a term of fifty years for murder, five years concurrent for possession of a sawed off shotgun and five years consecutive for assault, 2nd degree, for a total effective sentence of fifty-five years.
The factual bases for the convictions as reported in State v.Maldonado, 51 Conn. App. 702 (1999), are as follows:
In July, 1994, the defendant was living with his girlfriend, Marisol Santiago, in a third floor apartment on Bond Street in Hartford. On the morning of July 29, 1994, the defendant accused Santiago of being unfaithful with Armando Rivera, the manger of a grocery store located on the first floor of the defendant's apartment building. The defendant told Santiago that he was going to kill Rivera, punched her and threw her to the floor. The defendant retrieved a knife from the kitchen and threatened Santiago with it. Santiago grabbed the knife, closing her hand around its blade. The defendant then pulled the blade upward, severely cutting the area between Santiago's thumb and forefinger. The wound caused extensive bleeding and required several stitches. The defendant left the apartment before the police could apprehend CT Page 7568 him.
 Several hours later, the defendant retrieved a sawed-off shotgun from a garage near his apartment and went to the grocery store. As the defendant approached, he observed Rivera come out of the store and then go back inside. After the defendant entered the store he and Rivera struggled over the shotgun and one round was fired into the floor. Rivera then fled with the defendant in pursuit. The defendant, then shot Rivera as Rivera yelled: "My son, my son." The defendant fired a second time, hitting Rivera and causing him to fall to the ground. The defendant then approached Rivera, reloaded the shotgun with two more cartridges and shot Rivera once in the head, saying: "So you stop screwing around with women."
 Later that day, the defendant went grocery shopping with a friend. When they finished shopping, they drank beer and smoked marijuana together. The defendant, who had talked about the shooting, admitted to his friend on the following morning that he had committed the murder. He thereafter went to New Jersey, where he worked at an auto body shop using a different name. In January, 1995, the defendant was arrested and returned to Connecticut where, after voluntarily waiving his right to remain silent, he gave an oral and written confession in which he admitted to the killing.
Counsel for the petitioner has prepared a Sentence Review Memorandum. In summary he argues that the petitioner was (and is) suffering from schizophrenia, that at the time of the offense his mental illness impaired his thinking and judgment, but at this time he is receiving appropriate medication and functioning quite well. He argues that the circumstances of his mental illness, which has been shown to be controllable, warrants a lesser sentence than the fifty-five years.
In his remarks to this panel the petitioner expressed his remorse, but stated that at the time he was not properly medicated for his mental illness.
The State's Attorney asks that the sentence be affirmed as being reasonable and proportionate.
The issue before the trial court was whether the petitioner lacked substantial capacity to conform his conduct according to law or to CT Page 7569 appreciate the wrongfulness of his conduct as a result of mental disease or defect. Two psychiatrists testified for the defense, but on examination both acknowledged they had serious questions about the petitioner's credibility, particularly with regard to his drug and alcohol abuse. The trial court did not accept the affirmative defense of legal insanity and he was found guilty of the charges.
Much of the memorandum provided by counsel is directed to the petitioner's rehabilitative progress subsequent to his sentencing. These include such documents as his GED, letters of recommendation from prison officials and prison employment records.
This Division has often stated that we do not sit as a Board of Parole to evaluate an inmate's institutional progress. Our function is limited to reviewing a sentence pursuant to the scope of review authorized by Practice Book § 43-28.
The petitioner, after stabbing his girl friend, killed an innocent store keeper who was pleading for his life. The victim had a wife and two children and his wife was pregnant with their third child. After a few months she was forced to give up running the grocery store.
This was a senseless, vicious murder to one victim and an assault to the second. The petitioner had prior convictions for burglary and threatening.
The sentencing court, despite the heinous nature of the crimes and devastating impact to the victims, gave the petitioner consideration because he was "emotionally distraught and conflicted. . .".
We conclude that under all the circumstances, the sentence was neither disproportionate nor inappropriate. It is affirmed
 ___________________ ___________________ ___________________
Klaczak, Norko and Miano, J's, participated in this decision.