STATE OF CONNECTICUT *v.* WILLIAM B. SCHROFF III
(12358)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and KLINE, Js.

Argued October 2, 1985—decision released January 21, 1986

*Bruce A. Sturman,* public defender, for the appellant (defendant).

*Guy W. Wolf III,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

KLINE, J. After a jury trial, the defendant, William B. Schroff III, was convicted of the crimes of kidnapping in the first degree, in violation of General Statutes 53a-92 (a) (2) (A), sexual assault in the first degree, in violation of General Statutes § 53a-70 (a), assault in the second degree, in violation of General Statutes § 53a-60 (a) (2), and of six counts of theft of a firearm, in violation of General Statutes § 53a-212 (a). The defendant was given a total effective sentence of fifty years on all counts.

From this judgment the defendant has appealed claiming that the court erred (1) by abusing its discretion in denying the defendant's motion to sever the six counts of theft of a firearm from the sexual assault,

kidnapping and assault charges, and (2) in allowing the state's attorney to cross-examine the defendant about the firearms, when this subject was allegedly outside the scope of direct examination.

The jury could reasonably have found the following facts: On August 8, 1982, between 1:30 and 2 a.m., the victim left her home to walk to her friend's home approximately two miles away. The victim was observed proceeding easterly on the Boston Post Road by Kenneth Smith of the Milford police department. The officer, concerned for the young woman's safety, drove down the road to an area where he could make a U-turn. Meanwhile, the operator, later identified as the defendant, of a white van proceeding easterly stopped to ask the victim if she wanted a ride, which she declined. The van proceeded over the crest of a hill and disappeared. As the victim continued to walk along the roadside, the defendant jumped out of the bushes, hit the victim on the left side of her head and pulled her over a guardrail into the bushes. She tried to escape but was subdued, and a knife was produced. The victim was told to remain silent as there were police in the area.

Meanwhile, Smith discovered the van, examined it, and found no one inside. A radio check revealed that the van was registered to the defendant. After his investigation, he radioed the van's position to a brother officer at 2:15 a.m., but when he returned at 3:15 a.m., the van was gone.

During this time lapse, the defendant and the victim made their way to the white van, which the victim recognized as the one which had stopped earlier. The victim had ample opportunity to observe her assailant and the interior of the van while he transported her some distance away from where the van had been parked. The defendant eventually parked and forced

the victim to drink some wine and ingest some pills. At this point the defendant made her undress and sexually assaulted her. Afterwards, he put thumbcuffs on the victim's and his forefinger and lay down to sleep. Finding the position uncomfortable, he removed the thumbcuffs and went to sleep. After waiting a period of time, the victim was able to dress herself and escape, taking the keys to the vehicle with her. The incident was ultimately reported to the police and the defendant was arrested in the van at the place where the victim had escaped.

The van was searched pursuant to a warrant. Among the many items found were six .22 calibre rifles that had been taken from a Boy Scout camp in New Hartford in August of 1982.

I

The defendant made a number of motions prior to trial. The only one which has become an issue in this appeal is his motion to sever the six gun charges from the other charges. The defendant's position was that he wanted to testify as to the sexual assault and kidnapping charges but that he did not want to take the stand relative to the firearms charges. The court denied the motion on two different occasions.

"The question of severance is within the sound discretion of the trial court and that discretion must not be disturbed unless it has been manifestly abused. *State* v. *Jonas,* 169 Conn. 566, 570, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976). 'The discretion of a court to order separate trials should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less than advantageous to the defendant.' *State* v. *Silver,* 139 Conn. 234, 240, 93 A.2d 154 (1952). '[A]n accused bears a heavy burden to show

that the denial of severance resulted in substantial injustice because of a manifest abuse of discretion in denying severance.' *State* v. *King,* 187 Conn. 292, 302, 445 A.2d 901 (1982); *State* v. *Bell,* 188 Conn. 406, 410–11, 450 A.2d 356 (1982)." *State* v. *Rodgers,* 198 Conn. 53, 63, 502 A.2d 360 (1985).

Economy and expedition of judicial administration were of paramount importance in the instant case. The arrest on the firearms charges occurred as a direct result of the investigation of the other charges. If a second trial were to be had on the firearms charges alone, much of the evidence relative to the first three counts might have to be introduced to explain the officer's basis for searching the vehicle and discovering the firearms. Economy and expedition of judicial resources are not achieved when the same facts must be proved to two different juries.

We have recently approved of the analysis employed by the Court of Appeals for the District of Columbia in *Baker* v. *United States,* 401 F.2d 958, 977 (D.C. Cir. 1968), cert. denied, 400 U.S. 965, 91 S. Ct. 367, 27 L. Ed. 2d 384 (1970). *Baker* held that "no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying." Id.; see also *Blunt* v. *United States,* 404 F.2d 1283, 1289 (D.C. Cir. 1968); *State* v. *Rodgers,* supra, 65; *State* v. *King,* supra.

In the present matter, although the defendant did declare that he wanted to testify with respect to the first three counts but not on the firearms counts, he at no time disclosed the substance of his expected testimony, and he demonstrated no reason for his not wanting to testify on the other counts. In effect, this deprived the court of the ability to make a decision that any claim of prejudice was genuine.

The defendant's complete failure to substantiate his claim of prejudice falls far short of the "convincing showing" required by our cases. *State* v. *Rodgers,* supra; *State* v. *King,* supra. The defendant has failed to sustain his heavy burden of showing that the denial resulted in a substantial injustice or prejudice. We cannot find an abuse of discretion in the trial court's denial of the defendant's motion to sever.

## II

The other issue raised by the defendant is whether the court was correct in allowing cross-examination concerning the rifles found in the defendant's van.

The defense counsel asked the defendant the following question on direct examination: "You have seen numerous articles that have been introduced into evidence. Do you recognize them?" This question was asked after the state had presented its case-in-chief. There had been introduced as a state's exhibit a black metal box containing the six disassembled .22 calibre rifles. These had been identified as stolen from a Boy Scout camp. In answer to his counsel's question, the defendant replied: "Specific articles that I had in the van at the time." Counsel then asked: "Why did you have these articles in the van?" The defendant replied: "At the time I was living in the van because I was staying with my friend and his brother or somebody was coming down from Vermont, moving in. I got booted out the door and two days before I was arrested. I was

moving to British Columbia, Canada permanently, as everything I owned was in the van, every bit of my belongings."

The defense counsel then went on to inquire about the thumbcuffs. Counsel made no further reference to the rifles, since, as he had indicated in his motion to sever, his client did not want to testify about the rifles.

On cross-examination, the state's attorney inquired about the rifles found in the van. The defense counsel objected on the ground that the question was beyond the scope of the direct examination. Initially, the trial court sustained the objection, then reversed itself and allowed the inquiry about the rifles.

"[I]t is settled Connecticut law that inquiry upon cross-examination is limited by the scope of the direct examination . . . . [T]hat scope is determined by all of the evidence offered during direct examination." *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cole,* 189 Conn. 518, 525, 457 A.2d 656 (1983); *State* v. *Ouellette,* 190 Conn. 84, 102, 459 A.2d 1005 (1983); *State* v. *Moye,* 177 Conn. 487, 507, 418 A.2d 870, vacated, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129, on remand, 179 Conn. 761, 409 A.2d 149 (1979); *State* v. *Zdanis,* 173 Conn. 189, 195, 377 A.2d 275 (1977); *State* v. *Hall,* 165 Conn. 599, 607, 345 A.2d 17 (1973); *State* v. *Evans,* 165 Conn. 61, 64, 327 A.2d 576 (1973).

The trial court is, however, allowed a great deal of discretion in fixing the limits of cross-examination. *State* v. *Amaral,* 179 Conn. 239, 244, 425 A.2d 1293 (1979); *State* v. *Croom,* 166 Conn. 226, 231, 348 A.2d 556 (1974). This is a broad, general rule and ordinarily it does not present any difficulty to the courts.

In this case, once counsel for the defendant asked about the articles in the van, he opened the door to questions relative to those articles, including the rifles.

The cross-examination went to the very heart of the trial, especially when considered in light of the defendant's motion to sever. The cross-examination by the state's attorney delved into those areas on which the defendant had no desire to testify. It is the cross-examination of this defendant that brings into focus the ultimate question: do different rules concerning cross-examination of witnesses apply to the defendant in a criminal case who is testifying than apply to other parties or witnesses to a matter in litigation. In this instance we think not.

While an accused has the right not to take the witness stand, if he does take the stand and testifies in his own behalf, he may be cross-examined and impeached as any other witness. *Brown* v. *United States,* 356 U.S. 148, 154–55, 78 S. Ct. 622, 2 L. Ed. 2d 589, reh. denied, 356 U.S. 948, 78 S. Ct. 776, 2 L. Ed. 2d 822 (1958). Subject to a few exceptions, the same rules of evidence apply in criminal cases as in civil cases. *State* v. *Parker,* 112 Conn. 39, 54, 151 A. 325 (1930). The most notable exceptions are the exclusionary rules prohibiting the use of evidence obtained in violation of the accused's constitutional rights. Tait & LaPlante, Conn. Evidence § 1.2 (b), p. 3. Those exceptions do not apply in this case. The defendant, when he took the stand, knew that he would be subjected to cross-examination. "While proper cross-examination must be related to the subject matter of direct examination . . . the trial court is allowed a liberal discretion in fixing its limits." *Akers* v. *Singer,* 158 Conn. 29, 36, 255 A.2d 858 (1969). "[T]he scope [of cross-examination] is to be measured by the subject matter of the direct examination rather than by specific exhibits which are introduced . . . ." *United States* v. *Segal,* 534 F.2d 578, 582 (3d Cir. 1976). The question on direct examination dealt in general terms with the contents of the van and was followed by a question which explained why the articles were

in the van. Once the contents became the subject matter of questions on direct examination, it was proper to cross-examine the defendant as to the contents. His response on direct that "everything I own was in the van, every bit of my belongings" implied, though ambiguously, that he owned the rifles found in the van. The state was entitled to inquire about the basis for his ambiguous claim of ownership.

Since the court allowed the cross-examination, it must be determined if there was an abuse of discretion. "It goes without saying that the term 'abuse of discretion' does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds." *State* v. *McCarthy,* 130 Conn. 101, 105, 31 A.2d 921 (1943); *Norris* v. *Clinkscales,* 47 S.C. 488, 499, 25 S.E. 797 (1896). "In determining whether there has been an abuse of discretion, much depends upon the circumstances of each case." *DuBose* v. *Carabetta,* 161 Conn. 254, 263, 287 A.2d 357 (1971); *Cummings* v. *General Motors Corporation,* 146 Conn. 443, 449–50, 151 A.2d 884 (1959); *Antonofsky* v. *Goldberg,* 144 Conn. 594, 597, 136 A.2d 338 (1957).

Considering the totality of the circumstances in this case, we cannot find that there was an abuse of discretion on the part of the trial court in allowing the cross-examination by the state.

There is no error.

In this opinion the other judges concurred.